STATE OF NORTH CAROLINA v. KENNY BOWDEN

No. COA11-305

(Filed 4 October 2011)

**Burglary and Unlawful Breaking or Entering—felonious breaking and entering—larceny after breaking and entering—motion to dismiss—sufficiency of evidence**

The trial court did not err by not dismissing for insufficient evidence charges of breaking and entering and larceny where defendant was arrested at the scene of a residential break-in, tried under a theory of acting in concert, and the evidence linking defendant to another who dropped property taken from the house and ran was insufficient.

Appeal by the State from judgments entered 4 October 2010 by Judge Eric L. Levinson in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 September 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen N. Bolton, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for Defendant.*

STEPHENS, Judge.

*Evidence and Procedural Background*

This case arises from a residential break-in and larceny in Charlotte on 17 September 2008. The evidence at trial tended to show the following: On that date, Mariela and Thomas Hernandez lived in a single-family home at 6641 Hampton Way Drive, across the street from Andrew Garvin. That morning, Ms. Hernandez locked the doors when she left for work. Later that morning, Mr. Garvin looked out his front window and observed a man wearing a black hoodie walk from the Hernandez's backyard to their front door. Knowing that Mr. and Ms. Hernandez were usually at work during the day, Mr. Garvin called 911.

Officer John Plyler of the Charlotte Mecklenburg Police Department arrived at the Hernandez home within five minutes of Mr. Garvin's call. Mr. Garvin continued to observe the scene from across the street. Officer Plyler parked his marked patrol car down the street from the Hernandez home, but did not see anyone on the street or in the Hernandez yard. As he walked toward the house, Officer Plyler

noticed that the front door was standing open. Officer Plyler radioed Officer Christopher Chipman, who was en route as backup and then "stood by" at the right front corner of the Hernandez house where he could observe the front yard, the right side yard, and part of the back yard.

At this point, the man in the hoodie came from the back of the Hernandez home toward the front yard again, wearing what appeared to be a white glove[1] and carrying various items, which were later determined to have come from inside the Hernandez home. Suddenly, possibly because he realized that law enforcement had arrived, the man dropped everything in the side yard and began walking away from the home. At this moment, Officer Chipman pulled up to the Hernandez house and the man in the hoodie took off running with Officer Chipman in pursuit.

A second man, later identified as Defendant Kenny Bowden, then emerged from behind the Hernandez home and walked toward the front yard. Officer Daniel C. Jones, who had also arrived at the scene, saw Defendant and called out to alert Officer Plyler to Defendant's presence. Defendant also took off running, and Officers Plyler and Jones gave chase. During the pursuit, Officer Plyler, who was in uniform, repeatedly identified himself as a police officer and ordered Defendant to stop and lie down on the ground. Defendant continued his flight. The officers eventually lost sight of Defendant and radioed for assistance. Defendant was discovered hiding in thick underbrush by a K-9 officer shortly thereafter. The man in the black hoodie was never apprehended.

At trial, Ms. Hernandez testified that her home had been left in disarray and identified jewelry, credit cards and other items from the home which had been found scattered in the yard. Officers Plyler and Jones identified Defendant as the second man who had run from the front yard of the Hernandez residence, although Mr. Garvin was not able to identify Defendant.

On 6 October 2008, the Mecklenburg County Grand Jury indicted Defendant for felonious breaking and entering and larceny after breaking and entering. On 14 January 2009, Defendant was indicted for having attained the status of habitual felon. Defendant was also charged with two counts of resisting a public officer. The cases were joined for trial at the 27 September 2010 criminal session of Mecklenburg County Superior Court. At the close of the State's evi-

---

1. Testimony at trial established that it was actually a white sock worn over the man's hand.

**STATE v. BOWDEN**

[216 N.C. App. 275 (2011)]

dence, Defendant moved to dismiss all charges. The trial court dismissed one count of resisting a public officer and denied Defendant's motion as to the remaining count of that offense. The court deferred ruling on the motion as to the other charges.[2] On 29 September 2010, the jury found Defendant guilty of felonious breaking and entering, larceny after breaking and entering, and the remaining count of resisting a public officer. Defendant then admitted his status as an habitual felon. The trial court deferred sentencing until arguments could be heard on Defendant's motion to dismiss the charges of felonious breaking and entering and larceny after breaking and entering.

On 1 October 2010, Defendant again moved to dismiss these charges. On 4 October 2010, the trial court entered judgments notwithstanding the verdicts on the felonious breaking and entering and larceny after breaking and entering charges, and dismissed the habitual felon charge. The court sentenced Defendant to 60 days imprisonment for the resisting a public officer conviction. The State appeals pursuant to N.C. Gen. Stat. § 15A-1445(a)(1) (2009).

*Standard of Review*

The standard of review on appeal from a trial court's ruling on a motion to dismiss is the same whether the defendant or the State prevailed below and regardless of whether the motion is granted at the close of the State's evidence, at the close of all evidence, or after return of a verdict. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).

Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.

If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.

In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for

---

2. We note that, although N.C. Gen. Stat. § 15A-1227(c) (2009) requires "[t]he judge [to] rule on a motion to dismiss for insufficiency of the evidence before the trial may proceed[,]" neither party has raised an issue regarding the trial court's deferral on appeal.

the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.

*State v. Fritsch*, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (internal citations and quotation marks omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

## Discussion

The State argues that the trial court erred in dismissing the felonious breaking and entering and larceny after breaking and entering charges against Defendant for insufficiency of the evidence. We disagree.

"The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992) (citing N.C. Gen. Stat. § 14-54(a) (1986)). "The criminal intent of the defendant at the time of breaking or entering may be inferred from the acts he committed subsequent to his breaking or entering the building." *Id.*

"The essential elements of larceny are that [the] defendant (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property." *State v. Coats*, 74 N.C. App. 110, 112, 327 S.E.2d 298, 300, *cert. denied*, 314 N.C. 118, 332 S.E.2d 492 (1985). Further, larceny committed after a breaking or entering is a felony, regardless of the value of the property taken. *State v. Perkins*, 181 N.C. App. 209, 219, 638 S.E.2d 591, 597-98 *disc. review denied*, 361 N.C. 222, 642 S.E.2d 708 (2007).

Here, Defendant was tried on a theory of acting in concert. " 'Under the doctrine of acting in concert, if two or more persons act together in pursuit of a common plan or purpose, each of them, if actually or constructively present, is guilty of any crime committed by any of the others in pursuit of the common plan.' " *State v. McCullers*, 341 N.C. 19, 29-30, 460 S.E.2d 163, 169 (1995) (quoting *State v. Abraham*, 338 N.C. 315, 328-29, 451 S.E.2d 131, 137 (1994)). "This is true even where the other person does all the acts necessary to commit the crime." *Abraham*, 338 N.C. at 329, 451 S.E.2d at 137 (internal citation and quotation marks omitted). In contrast, a defendant's presence at the scene of a crime is not evidence of his guilt, even

if the defendant is in sympathy with the criminal actor and makes no attempt to prevent the crime. *State v. Capps*, 77 N.C. App. 400, 402-03, 335 S.E.2d 189, 190 (1985).

Here, the State presented evidence that an unknown man, who appeared to be concealing his identity with a hoodie, was seen walking around the Hernandez yard and carrying property later determined to have been taken from the Hernandez home. This unknown man fled when he saw police officers and was never apprehended or identified. Defendant was also seen in the Hernandez yard, but was never seen entering or leaving the home or carrying any property belonging to Mr. or Ms. Hernandez. Defendant also fled from law enforcement officers. However, no evidence linked Defendant to the unknown man. In sum, the only evidence that could link Defendant to the break-in was (1) his presence in the back yard of the home just after the unknown man was seen carrying stolen property in the area, and (2) his flight from the crime scene when he saw the police officers.

As noted above, "[a] defendant's mere presence at the scene of the crime does not make him guilty of felonious larceny even if he sympathizes with the criminal act and does nothing to prevent it." *Id.* Thus, Defendant's presence in the Hernandez yard, standing alone, is not evidence of acting in concert. Further, while "[i]ntent to aid [another in commission of a larceny] may be inferred from [a] defendant's actions or from his relation to the perpetrator[,]" *Id.* at 403, 335 S.E.2d at 191, here, Defendant took no action to aid the unknown man and there is no known relationship between them. Finally,

> [w]hile the flight of an accused person may be admitted as a circumstance tending to show guilt, (i)t does not create a presumption of guilt, nor is it sufficient standing alone, but it may be considered in connection with other facts in determining whether the combined circumstances amount to an admission.

*State v. Gaines*, 260 N.C. 228, 231, 132 S.E.2d 485, 487 (1963) (internal quotation marks and citations omitted).

We agree with the State that *Gaines* is distinguishable from the facts before us. Unfortunately for the State, we conclude that the evidence in *Gaines*, while insufficient to support a larceny charge, was still *stronger* than the evidence presented in Defendant's case. In *Gaines*, the defendant (and another young man, Andrews) were charged with larceny in connection with a jewelry store robbery:

There was evidence Gaines and Andrews walked into the store with Billy Hill; that they were in the store when Billy Hill stole the box of diamonds; that they, along with Billy Hill, ran from the store when Davis was directed to call the Chief of Police; and that they left Cherryville in a Chevrolet car operated by Billy Hill and owned by Billy Hill's father.

There is no evidence Gaines or Andrews at any time had possession of any part of the diamonds or that they, by word or deed, aided and abetted Billy Hill in the theft of the box of diamonds. In short, the evidence tends to show that Gaines and Andrews were present when Billy Hill stole the box of diamonds and that they accompanied him in his flight from the scene of the crime.

The State offered in evidence the statements made by Billy Hill, Gaines and Andrews to the effect that Gaines and Andrews had nothing to do with the theft and had no knowledge that Billy Hill entered the store with intent to steal.

*Id.* at 231, 132 S.E.2d at 487. Our Supreme Court held that "[w]hile the[se] circumstances may raise a suspicion or conjecture of the guilt of Gaines and Andrews, this is insufficient to withstand their motions for judgments as of nonsuit." *Id.* at 232, 132 S.E.2d at 487.

Here, we recognize that, in contrast to the defendant in *Gaines*, Defendant was not merely present in a public place such as a jewelry store, but was instead on private property without the express permission of the owners. However, Defendant was not facing a charge of trespassing. In addition, nothing in the evidence at trial tended to show the nature of the Hernandez backyard or the neighborhood as a whole with regard to foot traffic, walking paths, or informal "cut-throughs."

Unlike in *Gaines*, Defendant and the unknown man were never seen together at the Hernandez home and did not flee together. They were never seen to have any interaction and there is no known connection between them, unlike the men in *Gaines* who entered and left the scene of the larceny together and were admitted acquaintances. Overall, the evidence of acting in concert here is weaker than that presented in *Gaines*, which our Supreme Court held was insufficient. Thus, the trial court here properly granted Defendant's motion to dismiss and we affirm, having found

NO ERROR.

Judges ERVIN and BEASLEY concur.