DAVIS, Judge.
 

 *180
 
 This case presents a number of issues stemming from the defendant's act of breaking into a barn adjacent to a building that was being rented by a church for the purpose of holding religious services. Anthony Lee McNair ("Defendant") appeals from his convictions of breaking or entering into a place of religious worship, possession of burglary tools, and injury to personal property. On appeal, Defendant argues that the trial court erred in denying his motion to dismiss the charges against him due to (1) insufficiency of the evidence to support his convictions; (2) the existence of fatal variances between his indictment and both the evidence at trial and the trial court's jury instructions; and (3) the facial invalidity of the indictment. After careful review, we find no error in part, vacate in part, and remand.
 

 Factual and Procedural Background
 

 The State presented evidence at trial tending to show the following facts: In February of 2014, Vision Phase III International Outreach Center ("Vision")-a church "engaged in international missions"-was renting a building (the "Chapel") in Greenville, North Carolina owned by Sutton Amusement Company ("Sutton") for the purpose of conducting its church services. The Chapel and several other structures situated behind it were located on a half block along Raleigh Street. One of these structures was a small barn (the "Barn"), which was located approximately 50 feet behind the Chapel. Although Sutton owned the Barn, it allowed Vision to use the Barn to store equipment that it could not keep in the Chapel.
 

 *181
 
 A six-foot-tall chain link fence stood along the sidewalk adjacent to Raleigh Street beside the Chapel. A large building also owned by Sutton and used for its storage purposes was located behind the Chapel and the Barn along the back side of the half block. Directly behind the Chapel and to the right of the Barn stood a ten-foot brick wall, which closed off access to the premises such that entry was only possible through the main gate of the chain link fence. Both the Chapel and the Barn were located within the area enclosed by the chain link fence, Sutton's large storage building, and the ten foot brick wall.
 

 A padlock secured the main gate of the chain link fence. A second padlock affixed to a hasp was used to secure the door of the Barn. One part of the hasp was screwed into the door frame and the other part was fastened to the door. The padlock was used to secure both parts of the hasp together in order to keep the Barn door locked.
 

 At approximately 1:00 a.m. on 19 February 2014, Officer Adam Smith of the Greenville Police Department was notified by dispatch that a 911 caller had reported the presence of a person "inside the fence" on the Sutton property near the Chapel. Detective Joshua Smith and Officer Chad Bowen of the Greenville Police Department were also dispatched to the scene.
 

 When Officer Smith arrived at the Raleigh Street side of the premises, he looked inside the fenced-in area and observed Defendant climbing over the ten-foot brick wall from the inside out. The officers discovered that the padlock securing the main gate at the front of the property had been cut off and was laying on the ground next to the gate. Outside the fenced-in area near the main gate, the officers discovered bolt cutters and an electrical cord.
 

 Inside the fenced-in area, the officers also discovered that (1) the Barn door had been opened; (2) "the whole padlock assembly" had been "pried off" of the Barn door; and (3) a pry bar that had previously been stored inside the Barn was laying on the ground inside the fenced-in area. The officers also found a pair of work gloves in the fenced-in area near the ten-foot wall. Detective Smith noticed "a metal gate propped up against the wall ... sort of like a ramp type, where [sic] somebody may have used to go up over" the brick wall.
 

 Defendant was subsequently arrested, advised of his
 
 Miranda
 
 rights, and questioned by Detective Matt McKnight at the Greenville
 
 *636
 
 Police Department. Detective McKnight testified that Defendant had stated that he was homeless and that he had "illegally entered the premises of
 
 *182
 
 the church for the purpose of sleeping and that all he did was sleep on a bench near the courtyard of the church."
 

 Defendant was indicted on the charges of: (1) breaking or entering into a place of religious worship; (2) possession of burglary tools; (3) injury to the personal property of Vision; (4) breaking or entering a building occupied by Sutton; and (5) injury to the personal property of Sutton. A jury trial was held beginning on 18 August 2015 before the Honorable W. Russell Duke, Jr. in Pitt County Superior Court. At trial, the State presented testimony from Officer Smith, Detective Smith, Officer Bowen, William Harper (the pastor of Vision), and Jonathan Sutton (the owner of Sutton Amusement Company). Defendant and his brother, Lynwood Leon McNair, testified for the defense.
 

 At the close of the State's evidence, counsel for Defendant made a motion to dismiss, which was denied by the trial court. The jury found Defendant guilty of: (1) breaking or entering into Vision, a place of religious worship; (2) possession of burglary tools; (3) injuring the personal property of Vision; and (4) injuring the personal property of Sutton. The jury found him not guilty of breaking or entering into a building occupied by Sutton. Defendant was also found guilty of attaining the status of a habitual felon.
 

 The trial court consolidated the judgments and sentenced Defendant to 146 to 188 months imprisonment. Defendant gave oral notice of appeal and also filed a written notice of appeal.
 

 Analysis
 

 On appeal, Defendant contends that the trial court erred by denying his motion to dismiss the charges against him. "When reviewing a defendant's motion to dismiss, this Court determines only whether there is substantial evidence of (1) each essential element of the offense charged and of (2) the defendant's identity as the perpetrator of the offense. Whether the evidence presented at trial is substantial evidence is a question of law for the court. Appellate review of a denial of a motion to dismiss for insufficient evidence is
 
 de novo
 
 ."
 
 State v. Fisher
 
 ,
 
 228 N.C.App. 463
 
 , 471,
 
 745 S.E.2d 894
 
 , 900-01 (internal citations and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 367 N.C. 274
 
 ,
 
 752 S.E.2d 470
 
 (2013).
 

 In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The
 
 *183
 
 test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.
 

 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378-79,
 
 526 S.E.2d 451
 
 , 455 (internal citations and quotation marks omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000).
 

 Our Supreme Court has held that "[i]f there is any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction, it is for the jury to say whether it is convinced beyond a reasonable doubt of defendant's guilt."
 
 State v. Franklin
 
 ,
 
 327 N.C. 162
 
 , 171-72,
 
 393 S.E.2d 781
 
 , 787 (1990). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed."
 
 State v. Scott
 
 ,
 
 356 N.C. 591
 
 , 595,
 
 573 S.E.2d 866
 
 , 868 (2002) (citation omitted).
 

 I. Breaking or Entering into a Place of Religious Worship
 

 Defendant's first argument is that the trial court erred in denying his motion to dismiss the charge of breaking or entering into a place of religious worship. Specifically, he contends that (1) the Barn was not a place of worship; and (2) the State presented insufficient evidence to support a finding that Defendant was guilty of the lesser-included
 
 *637
 
 offense of felony breaking or entering. We address each argument in turn.
 

 A. "Place of Religious Worship" Element
 

 N.C. Gen. Stat. § 14-54.1
 
 states as follows:
 

 (a) Any person who wrongfully breaks or enters any building that is a place of religious worship with intent to commit any felony or larceny therein is guilty of a Class G felony.
 

 (b) As used in this section, a "building that is a place of religious worship" shall be construed to include any church, chapel, meetinghouse, synagogue, temple, longhouse, or mosque, or
 
 other building that is regularly used, and clearly identifiable, as a place for religious worship
 
 .
 

 N.C. Gen. Stat. § 14-54.1
 
 (2015) (emphasis added). Therefore, the elements of this offense are that a person "[1] wrongfully breaks or
 
 *184
 
 enters [2] any building that is a place of religious worship [3] with intent to commit any felony or larceny therein."
 
 State v. Campbell
 
 ,
 
 234 N.C.App. 551
 
 , 557,
 
 759 S.E.2d 380
 
 , 384 (2014) (citation omitted),
 
 rev'd on other grounds
 
 ,
 
 368 N.C. 83
 
 ,
 
 772 S.E.2d 440
 
 (2015).
 

 As an initial matter, it is important to note that the only building Defendant is alleged to have broken into was the Barn, and the State concedes that the Barn itself was not used for religious worship. However, the State asserts that Defendant's act of breaking into the Barn nevertheless constituted breaking or entering a place of religious worship for purposes of
 
 N.C. Gen. Stat. § 14-54.1
 
 because "[t]he church was more than just a single building." Moreover, according to the State, the Barn was within the curtilage of the Chapel and, for this reason, the Barn should be deemed an extension of the Chapel for purposes of
 
 N.C. Gen. Stat. § 14-54.1
 
 . We reject the State's arguments on this issue.
 

 "The duty of a court is to construe a statute as it is written."
 
 Campbell v. First Baptist Church
 
 ,
 
 298 N.C. 476
 
 , 482,
 
 259 S.E.2d 558
 
 , 563 (1979) (citation omitted).
 
 N.C. Gen. Stat. § 14-54
 
 (c) defines the word "building" to include "any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property."
 
 N.C. Gen. Stat. § 14-54
 
 (c) (2015).
 

 Based on the manner in which
 
 N.C. Gen. Stat. § 14-54.1
 
 is worded, it is clear that in order for Defendant to have been convicted of violating this statute, the specific building Defendant is alleged to have broken into must have been a "building that is regularly used, and clearly identifiable, as a place for religious worship."
 
 See
 

 N.C. Gen. Stat. § 14-54.1
 
 . Although both the Chapel and the Barn meet the statutory definition of "building," it is clear that the Chapel and the Barn are separate structures. The State presented evidence at trial that the Chapel was used for religious services but presented no evidence that the Barn was used as a place of religious worship-a fact which the State also concedes in its brief.
 

 Thus, because the Barn was not itself used for religious worship and because the General Assembly has limited the reach of this offense to "building[s] that [are] regularly used, and clearly identifiable, as a place for religious worship[,]" the State cannot establish that Defendant was guilty of violating
 
 N.C. Gen. Stat. § 14-54.1
 
 . This Court is not at liberty to broaden the statutory text to encompass structures
 
 adjacent to
 
 buildings being used as a place of religious worship.
 
 State v. Wagner
 
 , --- N.C.App. ----, ----,
 
 790 S.E.2d 575
 
 , 582 (2016) ("Our courts lack the authority to
 
 *185
 
 rewrite a statute, and instead, the duty of a court is to construe a statute as it is written." (citation, quotation marks, and brackets omitted)),
 
 disc. review denied
 
 , --- N.C. ----,
 
 795 S.E.2d 221
 
 (2017).
 

 We are also unable to accept the State's argument that because the Chapel was a building that held religious services and the Barn was within the curtilage of the Chapel, the Barn was "clearly identifiable[ ] as a place for religious worship" as required by
 
 N.C. Gen. Stat. § 14-54.1
 
 (b). As quoted above, the definition of the term "building" contained in
 
 N.C. Gen. Stat. § 14-54
 
 references the term "curtilage" solely by referring to a "building within the curtilage of a
 
 *638
 

 dwelling house
 
 ."
 
 See
 

 N.C. Gen. Stat. § 14-54
 
 (emphasis added). Here, the State does not attempt to argue that any portion of the property occupied by Vision was being used as a dwelling house.
 

 We observe that the language in
 
 N.C. Gen. Stat. § 14-54
 
 linking the term "curtilage" to proximity to a dwelling house is consistent with caselaw from North Carolina's appellate courts defining curtilage.
 
 See, e.g.
 
 ,
 
 State v. Fields
 
 ,
 
 315 N.C. 191
 
 , 194,
 
 337 S.E.2d 518
 
 , 520 (1985) ("The curtilage is the land around a
 
 dwelling house
 
 upon which those outbuildings lie that are commonly used with the dwelling house." (citation and quotation marks omitted and emphasis added)).
 

 Thus, the evidence presented by the State was not sufficient to convict Defendant of violating
 
 N.C. Gen. Stat. § 14-54.1
 
 . Accordingly, we must vacate Defendant's conviction of that offense.
 

 B. Sufficiency of Evidence as to Breaking or Entering
 

 Alternatively, the State contends that in the event we determine the evidence was insufficient to convict Defendant under
 
 N.C. Gen. Stat. § 14-54.1
 
 , this Court should remand to the trial court for entry of judgment on the lesser-included offense of breaking or entering. Defendant, conversely, argues that the State not only failed to introduce evidence showing a violation of
 
 N.C. Gen. Stat. § 14-54.1
 
 but also failed to produce adequate evidence to support a charge of breaking or entering. Specifically, Defendant contends that his mere presence at the scene was insufficient to establish his guilt as to this offense.
 

 The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein. The criminal intent of the defendant at the time of breaking or entering may be inferred from the acts he committed subsequent to his breaking or entering [into] the building.
 

 *186
 

 State v. Bowden
 
 ,
 
 216 N.C.App. 275
 
 , 278,
 
 717 S.E.2d 230
 
 , 232-33 (2011) (internal citation and quotation marks omitted).
 

 Defendant asserts that the only evidence connecting him to the break-in was his presence in the area when law enforcement officers arrived. It is well settled that "a defendant's mere presence at the scene of the crime does not make him guilty...."
 

 Id.
 

 at 279
 
 ,
 
 717 S.E.2d at 233
 
 (citation and quotation marks omitted). However, the State presented the following evidence establishing that Defendant broke into the Barn: (1) Pastor Harper testified that on 18 February 2014 Vision had secured the Barn's door with a lock; (2) at 1:00 a.m. on 19 February 2014, a 911 call was received stating that an individual was inside the fenced-in area; (3) Defendant was found by law enforcement officers scaling a ten-foot brick wall near the Barn; (4) officers discovered a pry bar on the ground next to the Barn; and (5) a broken lock was found beside the Barn door.
 

 The evidence further supported an inference that Defendant intended to commit larceny when he entered the Barn. Upon their arrival at the scene, officers determined that the Barn "appeared to have been rummaged through" and "was kind of in disarray[.]" The officers also discovered that certain items, including a grill and a pressure washer, had been removed from the Barn and placed in the fenced-in area. Pastor Harper testified that these items had been present inside the Barn earlier that day. Thus, the State presented sufficient evidence that Defendant was guilty of breaking or entering into the Barn.
 

 "When the actual instructions given are sufficient to sustain a conviction on a lesser included offense, we consider the conviction a verdict on the lesser charge and then remand for appropriate sentencing."
 
 State v. Stokes
 
 ,
 
 367 N.C. 474
 
 , 479,
 
 756 S.E.2d 32
 
 , 36 (2014). "There are two lesser-included offenses to [
 
 N.C. Gen. Stat. § 14-54.1
 
 ]: felony breaking or entering under
 
 N.C. Gen. Stat. § 14-54
 
 (a) ... which lacks the 'place of religious worship' element, and misdemeanor breaking or entering under
 
 N.C. Gen. Stat. § 14-54
 
 (b) ... which lacks both the 'place of religious worship' element and the intent [to commit a felony or larceny therein] element."
 
 Campbell
 
 ,
 
 234 N.C.App. at 557
 
 ,
 
 759 S.E.2d at 384-85
 
 .
 

 *639
 
 Taking all the evidence in the light most favorable to the State, we are satisfied that although-as discussed above-the State did not put forth adequate evidence to satisfy the "place of religious worship" element of
 
 N.C. Gen. Stat. § 14-54.1
 
 , the State did present sufficient evidence for the jury to convict Defendant of the lesser-included offense of felony breaking or entering under
 
 N.C. Gen. Stat. § 14-54
 
 (a). Accordingly, we remand to the trial court for entry of judgment and resentencing on
 
 *187
 
 the lesser-included offense of felony breaking or entering.
 
 See
 

 State v. Clark
 
 ,
 
 137 N.C.App. 90
 
 , 97,
 
 527 S.E.2d 319
 
 , 323 (2000) (remanding for entry of judgment and resentencing on lesser-included offense where evidence was insufficient to establish guilt of greater offense).
 

 II. Possession of Burglary Tools
 

 Defendant makes two arguments with respect to his conviction for possession of burglary tools: (1) he did not have either actual or constructive possession of the burglary tools at issue; and (2) a fatal variance existed between the indictment and the court's instructions to the jury because the jury instructions-unlike the indictment-referenced the work gloves found on the ground inside the fenced-in area.
 

 A. Constructive Possession
 

 The State does not contend that Defendant had
 
 actual
 
 possession of the burglary tools, and there is no indication in the record that would support such an argument. However, the State does contend that Defendant had
 
 constructive
 
 possession of the pry bar and the bolt cutters at the time he was apprehended.
 

 Under the theory of constructive possession, a person may be charged with possession of an item ... when he has both the power and intent to control its disposition or use, even though he does not have actual possession. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. However, unless the person has exclusive possession of the place where the [items] are found, the State must show other incriminating circumstances before constructive possession may be inferred.
 

 State v. Davis
 
 ,
 
 325 N.C. 693
 
 , 697,
 
 386 S.E.2d 187
 
 , 190 (1989) (internal citations and quotation marks omitted). Thus "[t]here must be more than mere association or presence linking the person to the item in order to establish constructive possession."
 
 State v. McNeil
 
 ,
 
 209 N.C.App. 654
 
 , 663,
 
 707 S.E.2d 674
 
 , 682 (2011) (citation and quotation marks omitted).
 

 In the present case, burglary tools were found within the fenced-in area. While Defendant was not in exclusive possession of the area where the tools were found, the State presented the following other incriminating circumstances: (1) Defendant was found alone inside a privately-owned, fenced-in area at 1:00 a.m.; (2) as the officers entered
 
 *188
 
 the fenced-in area, they observed Defendant scaling a ten-foot brick wall in an apparent attempt to avoid apprehension; (3) the officers determined that someone had broken into the Barn, observing that toolboxes and cabinets in the Barn "appeared to [have been] rummaged through"; (4) padlocks were laying on the ground both next to the main gate and adjacent to the Barn door; and (5) several items, including a grill and pressure washer, that had previously been stored inside the Barn were found in the fenced-in area. These incriminating circumstances support a finding that Defendant had constructive possession of the burglary tools.
 

 B. Fatal Variance Between Indictment and Jury Instructions
 

 Defendant also argues that a fatal variance existed between the indictment and the trial court's instructions to the jury with respect to the charge of possession of burglary tools. Based upon our review of the trial transcript, it is clear that Defendant's trial counsel did not specifically raise this issue at trial. Our appellate courts, however, have "chosen to review ... unpreserved issues for plain error when the issue involves either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence."
 

 *640
 

 State v. Holbrook
 
 ,
 
 137 N.C.App. 766
 
 , 768,
 
 529 S.E.2d 510
 
 , 511 (2000) (citation, quotation marks, and brackets omitted). This Court has expressly applied this rule to unpreserved arguments alleging a fatal variance between an indictment and the trial court's jury instructions.
 
 See
 

 State v. Ross
 
 , --- N.C.App. ----, ----,
 
 792 S.E.2d 155
 
 , 158 (2016) ("Our review of this issue on appeal is for plain error, as Defendant failed to object to the jury instruction at trial on the basis that it varied materially from the indictment." (citations and emphasis omitted)).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted).
 

 Defendant's argument is premised on his assertion that although the indictment on the charge of possession of burglary tools only identified
 
 *189
 
 the pry bar and the bolt cutters as implements of housebreaking in Defendant's possession, the trial court nevertheless instructed the jury that it could find Defendant guilty if it found that he possessed either the pry bar, the bolt cutters,
 
 or the work gloves
 
 .
 

 "Our Courts have found that a trial court's jury instructions which vary from the allegations of the indictment might constitute error where the variance is regarding an
 
 essential element
 
 of the crime charged."
 
 State v. Lark
 
 ,
 
 198 N.C.App. 82
 
 , 92,
 
 678 S.E.2d 693
 
 , 700-01 (2009),
 
 disc. review denied
 
 ,
 
 363 N.C. 808
 
 ,
 
 692 S.E.2d 111
 
 (2010). However, "[a]llegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage."
 
 State v. Bollinger
 
 ,
 
 192 N.C.App. 241
 
 , 246,
 
 665 S.E.2d 136
 
 , 139 (2008),
 
 aff'd per curiam
 
 ,
 
 363 N.C. 251
 
 ,
 
 675 S.E.2d 333
 
 (2009).
 

 We find instructive our decision in
 
 Bollinger
 
 . In that case, the defendant was charged with carrying a concealed weapon, and his indictment stated that the defendant was carrying a "set of metallic knuckles" whereas the evidence at trial showed that the defendant was also carrying "one or more knives."
 
 Id.
 
 at 243,
 
 665 S.E.2d at 138
 
 (quotation marks, brackets, and emphasis omitted). The trial court did not instruct the jury on the defendant's act of carrying a "set of metallic knuckles" and instead instructed on his carrying of "one or more knives."
 

 Id.
 

 (quotation marks, brackets, and emphasis omitted).
 

 On appeal, we rejected the defendant's fatal variance argument, concluding that the indictment's language identifying the "metallic knuckles" was "mere surplusage."
 

 Id.
 

 at 246
 
 ,
 
 665 S.E.2d at 139-40
 
 . We reasoned that "[t]he gist of the offense [was] carrying a concealed
 
 weapon
 
 ."
 

 Id.
 

 at 246
 
 ,
 
 665 S.E.2d at 140
 
 . Thus, we held that although "the indictment alleged metallic knuckles while the evidence introduced at trial showed defendant carried knives in addition to metallic knuckles, the trial court's instructions on carrying a concealed weapon were not erroneous."
 

 Id.
 

 Moreover, we noted that even assuming
 
 arguendo
 
 that the trial court had, in fact, erred, the "mention of 'knives' in the jury instructions as opposed to 'metallic knuckles' ... did not affect the burden of proof required of the State or constitute a substantial change or variance from the indictment."
 

 Id.
 

 at 247
 
 ,
 
 665 S.E.2d at 140
 
 .
 

 The essential elements of possession of burglary tools are "(1) the possession
 
 *641
 
 of an implement of housebreaking (2) without lawful excuse, and the State has the burden of proving both of these elements."
 
 State v. Campbell
 
 ,
 
 188 N.C.App. 701
 
 , 711,
 
 656 S.E.2d 721
 
 , 728 (citation and quotation marks omitted),
 
 appeal dismissed
 
 ,
 
 *190
 

 362 N.C. 364
 
 ,
 
 664 S.E.2d 311
 
 (2008). The indictment charging Defendant with this offense stated as follows:
 

 POSSESSION OF BURGLARY TOOLS
 

 And the jurors for the State upon their oath present that on or about the 19th day of February, 2014, in the County named above the defendant named above unlawfully, willfully and feloniously did without lawful excuse have in the defendant's possession an implement of housebreaking, a wooden handle pry bar and 24" bolt cutters, in violation of G.S. 14-55.
 

 As in
 
 Bollinger
 
 , the indictment charged the defendant with both of the essential elements of the offense by asserting that defendant "ha[d] in [his] possession an implement of housebreaking" and this possession was "without lawful excuse...." Thus, the mention of specific tools was "mere surplusage."
 
 See
 

 Bollinger
 
 ,
 
 192 N.C.App. at 246
 
 ,
 
 665 S.E.2d at 139-40
 
 .
 

 The trial court's instructions to the jury on this charge stated, in pertinent part, as follows:
 

 The Defendant has also been charged with possession without lawful excuse of implements of housebreaking. For you to find the Defendant guilty of this offense the State must prove two things beyond a reasonable doubt.
 

 First, that the
 
 Defendant was in possession of implements of housebreaking
 
 . A pry bar, bolt cutters and gloves are implements of house-breaking if you find from the evidence beyond a reasonable doubt that they are made and designed for the purpose of house-breaking or they are commonly carried and used by housebreakers or is [sic] reasonably adapted for such use.
 

 ....
 

 And, second, that there was
 
 no lawful excuse
 
 for the Defendant's possession. The State must prove beyond a reasonable doubt that the Defendant intended to use the implements to break into a house or building or did use them for that purpose.
 

 (Emphasis added.)
 

 The above-quoted instruction confirms that the trial court properly instructed the jury as to both essential elements of the offense. The mere
 
 *191
 
 fact that the court mentioned three implements of housebreaking rather than two does not constitute error.
 
 [1]
 

 Moreover, even assuming
 
 arguendo
 
 that there was a variance, the evidence-as discussed above-supported a finding that Defendant had constructive possession of the pry bar and the bolt cutters. Defendant's possession of either the pry bar or the bolt cutters was sufficient to convict him of possession of burglary tools, and both of these tools were expressly mentioned in the indictment. As in
 
 Bollinger
 
 , the discrepancy cited by Defendant "did not affect the burden of proof required of the State or constitute a substantial change or variance from the indictment."
 
 See
 

 Bollinger
 
 ,
 
 192 N.C.App. at 246-47
 
 ,
 
 665 S.E.2d at 140
 
 . Thus, the trial court's instruction did not constitute plain error.
 

 III. Injury to Personal Property
 

 Finally, Defendant argues that the trial court erred in denying his motion to dismiss the two charges of injury to personal property for which he was convicted. Specifically, he contends that (1) the indictment charging injury to personal property of Vision was facially invalid because it did not identify Vision as an entity capable of owning property; (2) there was a fatal variance between the indictment and the evidence at trial as to the charge of injury to Vision's personal property because the State's evidence suggested that the damaged lock on the Barn door was actually owned by Sutton; and (3) his mere presence at the scene was insufficient to support a finding that Defendant was guilty of injury to the personal property of Sutton and Vision.
 

 A. Facial Validity of Indictment
 

 Defendant contends that the portion of his indictment charging him with injury to Vision's personal property was facially invalid because the indictment did not allege that Vision was capable of owning property. Although Defendant did not assert this argument at trial, our Supreme Court has held that "where an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court."
 
 State v. Wallace
 
 ,
 
 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341 (citations omitted),
 
 cert. denied
 
 ,
 
 *642
 

 531 U.S. 1018
 
 ,
 
 121 S.Ct. 581
 
 ,
 
 148 L.Ed.2d 498
 
 (2000). The Supreme Court has made clear that
 

 *192
 
 [t]he identity of the owner of the property that the defendant allegedly injured is a material element of the offense of injury to personal property. For that reason, a criminal pleading seeking to charge the commission of crimes involving theft of or damage to personal property, including injury to personal property, must allege ownership of the property in a person, corporation, or other legal entity capable of owning property.
 

 State v. Ellis
 
 ,
 
 368 N.C. 342
 
 , 345,
 
 776 S.E.2d 675
 
 , 677 (2015) (internal citations and quotation marks omitted).
 

 In
 
 State v. Campbell
 
 ,
 
 368 N.C. 83
 
 ,
 
 772 S.E.2d 440
 
 (2015), our Supreme Court addressed the application of this principle in cases where the owner of the property at issue is a church. The Court held that "alleging ownership of property in an entity identified as a church or other place of religious worship, like identifying an entity as a 'company' or 'incorporated,' signifies an entity capable of owning property[.]"
 
 Id.
 
 at 87,
 
 772 S.E.2d at 444
 
 (citation omitted).
 

 In the present case, the indictment issued on 13 October 2014 listed three charges and stated as follows:
 

 BREAKING AND OR ENTERING A PLACE OF WORSHIP
 

 The jurors for the State upon their oath present that on or about the 19th day of February, 2014, in the County named above the defendant named above unlawfully, willfully and feloniously did break and enter a building occupied by Vision Phase III International Outreach Center that is
 
 a place of religious worship
 
 , located at 208 Raleigh Ave., Greenville, NC, with the intent to commit a larceny therein, in violation of G.S. 14-54(A).
 

 POSSESSION OF BURGLARY TOOLS
 

 And the jurors for the State upon their oath present that on or about the 19th day of February, 2014, in the County named above the defendant named above unlawfully, willfully and feloniously did without lawful excuse have in the defendant's possession an implement of housebreaking, a wooden handle pry bar and 24" bolt cutters, in violation of G.S. 14-55.
 

 *193
 

 INJURY TO PERSONAL PROPERTY
 

 And the jurors for the State upon their oath present that on or about the 19th day of February, 2014, in the County named above the defendant named above unlawfully and willfully did wantonly injure personal property, a lock on the shed door of storage [sic] building, the property of Vision Phase III International Outreach Center, in violation of G.S. 14-160.
 

 (Emphasis added.)
 

 Thus, the first of the three charges contained in the indictment-the breaking or entering charge-identified Vision as "a place of religious worship[.]" The third charge-injury to personal property of Vision-stated that Defendant "unlawfully and willfully did injure personal property, a lock on the shed door of [a] storage building, the property of Vision Phase III International Outreach Center[.]" Therefore, by identifying Vision as a "place of religious worship" earlier in the indictment and then subsequently listing Vision as the owner of the personal property that Defendant damaged, the indictment comported with
 
 Campbell
 
 .
 

 A converse ruling requiring the State to have expressly identified Vision as a place of public worship in
 
 each
 
 portion of the indictment containing a separate charge would constitute a hypertechnical interpretation of the requirements for indictments that we believe is inconsistent with applicable North Carolina caselaw on this issue.
 
 See
 

 In re S.R.S.
 
 ,
 
 180 N.C.App. 151
 
 , 153,
 
 636 S.E.2d 277
 
 , 280 (2006) ("Our courts have recognized that while an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form."). Accordingly, the indictment here is properly construed as alleging that Vision-a place of religious worship-was an entity capable of owning property.
 

 B. Fatal Variance Between Indictment and Evidence at Trial
 

 Defendant also argues that there was a fatal variance between the indictment and the evidence at trial as to the ownership
 
 *643
 
 of the lock mechanism forming the basis for the charge alleging injury to Vision's personal property. The State asserts-and Defendant concedes-that this issue was not properly preserved because he failed to raise it in the trial court.
 

 "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion,
 
 *194
 
 stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). "This Court repeatedly has held that a defendant must preserve the right to appeal a fatal variance."
 
 State v. Hill
 
 , --- N.C.App. ----, ----,
 
 785 S.E.2d 178
 
 , 182 (2016).
 

 However, we elect to reach the merits of this argument pursuant to our authority under Rule 2 of the North Carolina Rules of Appellate Procedure. Rule 2 states as follows:
 

 To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
 

 N.C. R. App. P. 2.
 

 In
 
 State v. Gayton-Barbosa
 
 ,
 
 197 N.C.App. 129
 
 ,
 
 676 S.E.2d 586
 
 (2009), we invoked Rule 2 to review a similar fatal variance argument that had not been adequately preserved for appellate review. We reasoned that "it is difficult to contemplate a more 'manifest injustice' to a convicted defendant than that which would result from sustaining a conviction that lacked adequate evidentiary support, particularly when leaving the error in question unaddressed has double jeopardy implications."
 
 Id.
 
 at 135,
 
 676 S.E.2d at 590
 
 . Because this type of alleged error is "sufficiently serious to justify the exercise of our authority under Rule 2 [,]"
 
 State v. Campbell
 
 , --- N.C.App. ----, ----,
 
 777 S.E.2d 525
 
 , 530 (2015) (quotation marks and brackets omitted), we elect to exercise our discretion under Rule 2 and review this issue.
 
 See
 

 Hill
 
 , --- N.C.App. at ----,
 
 785 S.E.2d at 182
 
 (invoking Rule 2 to address merits of defendant's argument regarding fatal variance between indictment and evidence at trial).
 

 Defendant contends that the evidence presented at trial tended to show that the hasp affixed to the Barn door was owned by Sutton-rather than Vision-and that Vision merely owned a padlock securing the hasp. He further argues that although the evidence showed that the hasp was damaged, the evidence did not show that the padlock was injured as a result of the events of 19 February 2014.
 

 At trial, multiple witnesses testified that they noticed the lock on the Barn door had been "busted into," "pried open," or "broken off." Officer Bowen testified regarding his observation of the padlock assembly on the Barn door as follows:
 

 *195
 
 [OFFICER BOWEN:] ....As we were going back to the barn, there's a barn kind of in the center of this fenced-in area that we were at. We noticed that the door was open on this barn. Upon closer inspection of the door, you go up-and it was padlocked. You know, on a padlock usually you have one side that's screwed to the door frame and the other to the door. Well, it appeared that one side of the frame where the lock [sic] had been pried off. So basically you could open the door-the whole padlock assembly had come off with it. So it looked like it had been forced open based on what I could see.
 

 The State also presented evidence from Detective Smith on this subject.
 

 [PROSECUTOR:] What did you do next?
 

 [DETECTIVE SMITH:] Continued to search around. There was a lock that appeared to be broken and we cleared the [Barn].
 

 [PROSECUTOR:] Well, let me ask you about that. You mentioned a lock; where was the lock?
 

 [DETECTIVE SMITH:] By one of [sic] doors to the [Barn].
 

 ....
 

 *644
 
 [PROSECUTOR:] Is this the same [Barn] where the lock appeared to have been broken?
 

 [DETECTIVE SMITH:] Yes, sir.
 

 Pastor William Harper also testified during direct examination regarding this lock.
 

 [PROSECUTOR:] I'm showing you now what's been marked State's Exhibit 9. Can you identify that?
 

 [PASTOR HARPER:] Yeah, that's the door of the barn that sits on the left as you look at it, and it's a lock that's been broken off.
 

 ....
 

 [PROSECUTOR:] Now, when is the last time you had seen the [Barn]?
 

 *196
 
 [PASTOR HARPER:] The day before; I normally do a normal check through the whole-
 

 [PROSECUTOR:] And how do you normally secure that-or how is it normally secured?
 

 [PASTOR HARPER:] Well, lock and key; it's a lock and key that we use.
 

 Finally, Jonathan Sutton, the owner of Sutton Amusement Company, testified regarding the ownership of the lock on the door of the Barn.
 

 [PROSECUTOR:] You mentioned the [Barn] that, I think you said, was jimmied or broken in-busted into, I think, is what you said; can you describe that building for me?
 

 [SUTTON:] It's a small storage building on cinder blocks. I would estimate in size maybe, you know, twelve by ten, if even.
 

 [PROSECUTOR:] And what do you keep in there?
 

 [SUTTON:] The church-I allow the church to utilize that [Barn]. I don't know what would have been in that [Barn], the church uses it.
 

 [PROSECUTOR:] Do you normally secure that or does somebody else secure that [Barn]?
 

 [SUTTON:] Typically the church, you know, secures it.
 

 While admittedly the evidence presented at trial regarding the damage to the lock on the door of the Barn was not a model of clarity, viewing the evidence in the light most favorable to the State-as we must-we believe that sufficient evidence was presented to allow the jury to find that Vision owned the lock that secured the Barn door and that this lock was damaged. Thus, we cannot say that a variance existed between the charge alleged in the indictment and the evidence at trial. Accordingly, this argument is overruled.
 

 C. Sufficiency of Evidence as to Defendant's Convictions for Injury to Personal Property
 

 Finally, Defendant contends that his mere presence at the scene of the break-in was insufficient to support his conviction of injury to personal property. Once again, we disagree.
 

 *197
 
 The essential elements of injury to the personal property of another are "(1) that personal property was injured; (2) that the personal property was that of another,
 
 i.e.
 
 , someone other than the person or persons accused; (3) that the injury was inflicted wantonly and wil[l]fully; and (4) that the injury was inflicted by the person or persons accused."
 
 In re Meaut
 
 ,
 
 51 N.C.App. 153
 
 , 155,
 
 275 S.E.2d 200
 
 , 201 (1981) (quotation marks omitted).
 

 As discussed above, the evidence at trial-when viewed in the light most favorable to the State-was that (1) Sutton secured the main gate with a padlock; (2) Vision secured the Barn door with a padlock of its own; (3) officers received a 911 call that an individual was inside the fenced-in area at 1:00 a.m.; (4) Defendant was found by officers apparently attempting to leave the premises by climbing the brick wall; (5) a pry bar was found on the ground next to the Barn and bolt cutters were located on the ground outside the main gate; and (6) broken locks were discovered on the ground next to the main gate and the Barn. Therefore, we reject Defendant's argument that the evidence simply showed his mere presence at the scene. To the contrary, the evidence presented by the State was sufficient to allow the jury to find that he was guilty of injury to the personal property of both Vision and Sutton.
 

 *645
 

 Conclusion
 

 For the reasons stated above, we vacate Defendant's conviction of felony breaking or entering into a place of religious worship under
 
 N.C. Gen. Stat. § 14-54.1
 
 and remand for entry of judgment on the lesser-included offense of felony breaking or entering and resentencing. We conclude that Defendant received a fair trial free from error as to his remaining convictions.
 
 [2]
 

 NO ERROR IN PART; VACATED IN PART; REMANDED WITH INSTRUCTIONS.
 

 Chief Judge McGEE and Judge BERGER concur.
 

 [1]
 

 Defendant does not dispute the fact that there was sufficient evidence presented at trial to allow the jury to find that he possessed the work gloves.
 

 [2]
 

 Defendant also argues in his brief that the trial court improperly added an extra point to his prior record level during sentencing, and the State concedes error on this issue. However, this argument was linked to Defendant's conviction under
 
 N.C. Gen. Stat. § 14-54.1
 
 . Because we are vacating his conviction for that offense and remanding for resentencing, this argument is moot.